**PELTON GRAHAM LLC**
Brent E. Pelton (BP 1055)
pelton@peltongraham.com
Taylor B. Graham (TG 9607)
graham@peltongraham.com
111 Broadway, Suite 1503
New York, NY 10006
Telephone: (212) 385-9700
www.peltongraham.com

*Attorneys for Plaintiffs, the putative*
*FLSA Collective and Class*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| **CORDELL BAKER, XAVIER ANGULO, and OWEN AVILES, Individually and On Behalf of All Others Similarly Situated,**<br><br>**Plaintiffs,**<br><br>-against-<br><br>**ENCON INDUSTRIES CORP., and ANTHONY ENRICO CORE, Jointly and Severally,**<br><br>**Defendants.** | **COLLECTIVE & CLASS ACTION COMPLAINT**<br><br>**Jury Trial Demanded** |

Plaintiffs Cordell Baker, Xavier Angulo, and Owen Aviles (the "Plaintiffs"), individually and on behalf of all others similarly situated, as class and collective representatives, upon personal knowledge as to themselves and upon information and belief as to other matters, allege as follows:

1

## NATURE OF THE ACTION

1.    Plaintiffs are former employees of Defendants who performed residential trash and refuse removal and collection work pursuant to contracts entered into by Defendant Encon Industries Corp. ("Encon") with the Town of Babylon (the "Public Works Contracts").

2.    Throughout the relevant time period, Plaintiffs were not paid the applicable prevailing rate of wages or supplemental benefits for all hours that they worked performing trash and refuse removal and collection within the Town of Babylon pursuant to the Public Works Contracts.

3.    Further, Plaintiffs were not paid wages of any kind for all time spent checking and preparing the garbage trucks and/or dropping off the trucks at Defendants' yard at the start and end of each shift, fueling the truck, and submitting required paperwork upon the completion of their route assignments, assisting in the completion of other collection routes, and additionally were automatically deducted one (1) hour meal breaks per shift which they were not permitted to take, resulting in significant unpaid regular and overtime wages each week.

4.    Plaintiffs bring this action to recover unpaid overtime premium pay owed to them pursuant to both the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.* and the New York Labor Law ("NYLL"), §§ 650 *et seq.*  Plaintiffs also seek to recover unpaid prevailing wages, daily overtime and supplemental benefits which they and the members of the putative Class were entitled to receive for work they performed pursuant to the Public Works Contracts, which required payment of prevailing wages.

5.    Plaintiffs bring their FLSA claims on behalf of themselves and a collective of all other similarly situated employees of Defendants. Plaintiffs bring their NYLL claims on behalf of themselves and a Federal Rule of Civil Procedure 23 ("Rule 23") class of all employees who

worked for Defendants performing trash and refuse removal and collection work as shapers, helpers, and drivers pursuant to contracts with the Town of Babylon during the relevant statutory period.

6.      Plaintiff Baker also brings an individual claim of unlawful retaliation against Defendants pursuant to the § 215 of the NYLL for terminating Plaintiff Baker following complaints made to Defendants with respect to Defendants' failure to pay Plaintiff the applicable prevailing wage rates and supplemental benefits.

## JURISDICTION AND VENUE

7.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331, 1337 and 1343, and supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.

8.      In addition, the Court has jurisdiction over Plaintiffs' claims under the FLSA pursuant to 29 U.S.C. § 216(b).

9.      Venue is proper in this district pursuant to 28 U.S.C. § 1391 because Defendants' business is located in this district and a substantial part of the events or omissions giving rise to the claims occurred in this district.

10.      This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

11.      On March 20, 2020, New York Governor Andrew M. Cuomo signed Executive Order 202.8 in an effort to stem the spread of COVID-19, which tolls for thirty (30) days "any specific time limit[s] for the commencement, filing, or service of any legal action, notice, motion or other process or proceeding" under any New York State laws or court procedural rules. The thirty (30)-day tolling period began on March 20, 2020 and continued until April 19, 2020. On

April 7, 2020, Governor Cuomo signed Executive Order 202.14, which extended the tolling period to May 7, 2020. Subsequently, on May 7, 2020, Governor Cuomo issued Executive Order 202.28, tolling all statutes of limitations for an additional thirty (30) days through June 6, 2020. On June 6, 2020, Governor Cuomo issued Executive Order 202.38, tolling all statutes of limitations until July 6, 2020. On July 7, 2020, Governor Cuomo issued Executive Order 202.48 tolling all statutes of limitations until August 5, 2020. On August 5, 2020, Governor Cuomo issued Executive Order 202.55, which tolled all statutes of limitations until September 4, 2020. On September 4, 2020, Governor Cuomo signed Executive Order 202.60, which extended the tolling period an additional thirty (30) days to October 4, 2020. On October 4, 2020, Governor Cuomo issued Executive Order 202.67, which extended the tolling period to November 3, 2020. In total, the Executive Orders set forth herein provided for a toll of two hundred and twenty-eight (228) days.

### THE PARTIES

**Plaintiffs:**

12.     Plaintiff Cordell Baker ("Baker") was, at all relevant times, an adult individual residing in Suffolk County, New York.

13.     Plaintiff Xavier Angulo ("Angulo") was, at all relevant times, an adult individual residing in Suffolk County, New York.

14.     Plaintiff Owen Aviles ("Aviles") was, at all relevant times, an adult individual residing in Suffolk County, New York.

15.     Throughout the relevant time period, Plaintiffs performed work for Defendants in residential areas located in the Town of Babylon, Suffolk County, including but not limited to the communities of Wyandanch, Farmingdale, Deer Park, West and North Babylon, Amityville, Copiague, Wheatley Heights, and others.

16.     At all times relevant, Plaintiffs and Defendants' other employees performing trash and refuse removal and collection work performed their work exclusively in Long Island, New York and did not cross state lines for their work.

17.     The trash, refuse and recycling routes on which Plaintiffs and Defendants' other employees worked were fully intrastate (within Suffolk County) and involved the pick-up, transport, and delivery of such refuse entirely within the State of New York and not traveling in interstate commerce.

18.     Upon information and belief, there was no knowledge or expectation in performing the trash, refuse and recycling route duties for the Town of Babylon that any such refuse would be transported across state lines.

19.     Plaintiffs consent in writing to be party to this action, pursuant to 29 U.S.C. § 216(b), and their individual consent forms are attached hereto.

**Defendants:**

20.     Defendant Encon Industries Corp. (hereinafter referred to as "Encon" or the "Corporate Defendant") is an active New York corporation registered with the New York State Department of State ("DOS") Division of Corporations on April 24, 2012, with its principal place of business and DOS Service of Process Address located at 173 School Street, Westbury, New York 11590.

21.     At all relevant times, the Corporate Defendant has been and continues to be an employer engaged in interstate commerce and/or the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a).

22.     Upon information and belief, at all relevant times, the Corporate Defendant has had gross revenues in excess of $500,000.00.

5

18.    Upon information and belief, Defendant <u>Anthony Enrico Core</u> ("Core" or "Individual Defendant" and, collectively with the Corporate Defendant, the "Defendants") is an owner and operator of Encon who established the companies' payroll policies, including the unlawful practices complained of herein.

19.    Defendant Core is the Chief Executive Officer and agent registered to receive Service of Process for the Corporate Defendant, as listed in public DOS records.

20.    The Corporate Defendant and Individual Defendant are joint employers of Plaintiffs and the putative Collective Action Members and Class Members.

23.    The Individual Defendant participated in the day-to-day operations of the Corporate Defendant and acted intentionally in his direction and control of Plaintiffs and the Corporate Defendant's other similarly situated employees and is therefore an "employer" pursuant to the FLSA, 29 U.S.C. § 203(d) and regulations thereunder, 29 C.F.R. § 791.2, as well as the NYLL § 2 and the regulations thereunder, and is jointly and severally liable with the Corporate Defendant.

24.    At all relevant times, Defendants have been and continue to be employers engaged in interstate commerce and/or the production of goods for commerce, within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207 (a). At all relevant times, Defendants employed, and/or continue to employ, Plaintiffs and each of the Collective Action and Class Members within the meaning of the FLSA.

25.    At all relevant times, Plaintiffs and the Collective Action and Class Members were employed by Defendants within the meaning of the NYLL, §§ 2 and 651.

## FLSA COLLECTIVE ACTION ALLEGATIONS

26.    Pursuant to 29 U.S.C. §§ 207 & 216(b), Plaintiffs bring their First Cause of Action as a collective action under the FLSA on behalf of themselves and the following collective:

> All persons employed by Defendants at any time since April 1, 2019 and through the entry of judgment in this case (the "Collective Action Period") who performed trash and refuse removal and collection work as Shapers, Helpers and/or Drivers for Encon Industries Corp. (the "Collective Action Members").

27.     A collective action is appropriate in this circumstance because Plaintiffs and the Collective Action Members are similarly situated, in that they were all subjected to Defendants' illegal policy of failing to pay any wages for a substantial number of work hours each week, let alone proper overtime pay for work performed in excess of forty (40) hours each week. As a result of this policy, Plaintiffs and the Collective Action Members did not receive legally-required overtime pay for all hours worked in excess of forty (40) hours per week.

28.     Plaintiffs and the Collective Action Members have substantially similar job duties and were paid pursuant to a similar, if not the same, payment structure.

## NEW YORK FED. R. CIV. P 23 CLASS ALLEGATIONS

29.     Pursuant to the NYLL, Plaintiffs bring their Second through Fifth Causes of Action under Rule 23 of the Federal Rules of Civil Procedure on behalf of themselves and the following class:

> All persons employed by Defendants in New York at any time since August 17, 2015 and through the entry of judgment in this case (the "Class Period") who performed trash and refuse removal and collection work as Shapers, Helpers and/or Drivers for the Town of Babylon (the "Class Members").

30.     The Class Members are readily ascertainable. The number and identity of the Class Members are determinable from the records of Defendants. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided by any means permissible under the Federal Rules of Civil Procedure.

31.     The Class Members are so numerous that joinder of all members is impracticable.

32.     Upon information and belief, there are in excess of forty (40) Class Members.

33.    <u>Common questions of law and fact exist as to all Class Members and predominate over any questions solely affecting individual Class Members</u>. Such common questions will determine Defendants' liability to all (or nearly all) Class Members. These common questions include:

a. whether Defendants employed Plaintiffs and the Class Members within the meaning of the NYLL;

b. whether Defendants failed to keep true and accurate time records for all hours worked by Plaintiffs and the Class Members;

c. whether Defendants failed and/or refused to pay Plaintiffs and the Class Members wages for all hours worked;

d. whether Defendants failed to pay overtime wages to Plaintiffs and the Class Members for all hours worked over forty (40) in a given week;

e. whether Defendants failed to provide Plaintiffs and the Class Members with a proper statement of wages with every wage payment as required by the NYLL;

f. whether Defendant Encon breached its contract(s) with the Town of Babylon and/or state and city public entities by failing to pay Plaintiffs and the Class Members, who are third-party beneficiaries of such contracts, at the applicable prevailing wage rates;

g. whether Defendants failed and/or refused to pay Plaintiffs and the Class Members supplemental benefits or the cash equivalent of such benefits as required by the prevailing wage schedules;

h. whether Defendants failed and/refused to pay Plaintiffs and the Class Members the prevailing wage overtime premiums for work performed in excess of eight (8) hours per day;

i.    whether Defendants were unjustly enriched by failing to pay Plaintiffs and the Class Members at prevailing wage rates on public works jobs;

j.    whether Defendants failed to keep true and accurate time records for all hours worked by Plaintiffs and the Class Members;

k.    whether Defendants are liable for all damages claimed hereunder, including but not limited to compensatory damages, liquidated damages, interest, costs and disbursements and attorneys' fees.

34.    <u>Plaintiffs' claims are typical of the Class Members' claims</u>. Plaintiffs, like all Class Members, were employed by Defendants as trash and refuse Shapers, Helpers and/or Drivers and subjected to Defendants' corporate wage and payroll policies. Plaintiffs, like all Class Members, were, *inter alia*, not paid wages for all hours worked each day including overtime premiums for hours worked over 40 in a given workweek, not paid prevailing wages, supplemental benefits and/or daily/weekly overtime prevailing wages for all work performed pursuant to Encon's public works contracts with New York State municipalities and agencies, including the Town of Babylon, were automatically deducted one (1) hour lunch breaks for all shifts even though at no point during their respective employment periods were they permitted to take any meal breaks, and were not provided with accurate wage statements detailing all of the hours that they worked each pay period. If Defendants are liable to Plaintiffs for the claims enumerated in this Complaint, they are also liable to all Class Members.

35.    <u>Plaintiffs and their Counsel will fairly and adequately represent the Class</u>. There are no conflicts between Plaintiffs and the Class Members, and Plaintiffs bring this lawsuit out of a desire to help all current and former Class Members, not merely out of a desire to recover their own damages.

36.     Plaintiffs' counsel are experienced class action litigators who are well-prepared to represent the interests of the Class Members.

37.     A class action is superior to other available methods for the fair and efficient adjudication of this litigation.

38.     Defendants are sophisticated parties with substantial resources. The individual plaintiffs lack the financial resources to vigorously prosecute a lawsuit in federal court against corporate defendants.

39.     The individual members of the Class have no interest or capacity to bring separate actions; Plaintiffs are unaware of any other currently pending litigation concerning this controversy; it is desirable to concentrate the litigation in one case; and there are no likely difficulties that will arise in managing the class action.

## STATEMENT OF FACTS

### Defendants' Company

40.     Defendant Encon is a New York Corporation in the business of solid waste, yard waste, and recyclable material collection operating from its main office located at 173 School Street, Westbury, New York 11590.

41.     As advertised on Defendants' website and in public records, throughout the relevant time period, Defendants have provided town-wide collection of residential solid waste and recyclables for the Town of Babylon.  (*See* http://www.enconbabylon.com).

42.     Upon information and belief, Defendants have vast experience in the solid and yard waste collection business and maintain other business entities that provide municipal solid waste collection, transfer station and recycling services on Long Island.

43.     At all relevant times, the Individual Defendant has been in charge of the day-to-day

operations of the Corporate Defendant including, among other things, hiring and firing employees, setting the schedules and wage rates of employees, arranging and hosting employee meetings to address updates and concerns related to the work performed by Plaintiffs and Collective Action and Class and Subclass Members pursuant to the contract(s) in question, including with respect to the payment of prevailing wages and supplementary benefits and the wages actually received by Plaintiffs and Defendants' other employees.

44.     Upon information and belief, the Individual Defendant handled the operations of the Corporate Defendant and gave direction to supervisors to ensure that the work in the field was being conducted in accordance with their policies and procedures, including making determinations as to the firing of employees, including Plaintiff Baker, as well as other policies complained of herein.

**The Town of Babylon Public Works Contract**

45.     On or about September 11, 2012, the Town of Babylon awarded a contract to Defendant Encon for the purpose of performing Residential Solid Waste & Recyclables Collection Services for the Town of Babylon. Thereafter, Defendant Encon entered into the Residential Solid Waste and Recyclables Collection Service Agreement with the Town of Babylon, New York, dated October 1, 2012 (the "Public Works Contract").

46.     Upon information and belief, the Public Works Contact has a term of ten (years), ending September 30, 2022, and is still in effect as of the date of this filing.

47.     Upon information and belief, the Public Works Contract obligated Defendant Encon to pay Plaintiffs and Encon's other employees working pursuant to the Public Works Contract at or above the local prevailing wage rates, including any required supplemental benefits, in accordance with Section 230 of the New York Labor Law. Throughout the relevant time period,

Defendants received and executed Service Vouchers from the Town of Babylon and/or the Comptroller's Office providing notice of any increases and changes to the applicable local prevailing wage rates, including any required supplemental benefits.

48.    Encon's failure to pay Plaintiffs and Class Members proper prevailing wage rates, supplemental benefits and overtime premiums was a corporate policy that also applied to all of Defendants' other similarly situated employees.

49.    As required by law, a schedule containing the prevailing rates of wages and supplemental benefits ("prevailing wage schedules") to be paid to the Plaintiffs and Class Members should have been annexed to and formed a part of the Public Works Contract. If not annexed to the Public Works Contract, these schedules were expressly or impliedly incorporated into the contract as a matter of law and/or public policy.

50.    As employees of Defendants who were assigned to perform town-wide collection of residential solid waste and recyclables work for Defendants pursuant to the Public Works Contract, Plaintiffs are intended third-party beneficiaries of Encon's Public Works Contract.

51.    Plaintiffs and the Class Members should have been paid the prevailing rates of wages (including supplemental benefits) pursuant to the New York State Department of Labor Article 9 Prevailing Wage Schedules for "Trash and Refusal Removal" for Suffolk County.

52.    Upon information and belief, employees performing work as "Drivers" pursuant to the Public Works Contract were entitled to be paid the following rates during the relevant time period:

      a) July 1, 2014 through June 30, 2015: $18.85, plus $7.98 in supplemental benefits per hour;

      b) July 1, 2015 through June 30, 2016: $18.85, plus $9.73 in supplemental benefits per

hour;

c) July 1, 2016 through June 30, 2017: $19.85, plus $11.64 in supplemental benefits per hour;

d) July 1, 2017 through June 30, 2018: $19.85, plus $11.84 in supplemental benefits per hour;

e) July 1, 2018 through June 30, 2019: $28.27, plus $2.00 in supplemental benefits per hour;

f) July 1, 2019 through June 30, 2020: $30.07, plus $2.18 in supplemental benefits per hour;

g) July 1, 2020 through June 30, 2021: $30.91, plus $2.25 in supplemental benefits per hour;

h) July 1, 2021 through June 30, 2022: $28.60, plus $2.16 in supplemental benefits per hour.

53.    Upon information and belief, employees performing work as "Shapers" or "Helpers" pursuant to the Public Works Contract were entitled to be paid the following rates:

i) July 1, 2014 through June 30, 2015: $16.25, plus $7.98 in supplemental benefits per hour;

j) July 1, 2015 through June 30, 2016: $16.25, plus $9.73 in supplemental benefits per hour;

k) July 1, 2016 through June 30 2017: $17.25, plus $11.64 in supplemental benefits per hour;

l) July 1, 2017 through June 30, 2018: $17.25, plus $11.84 in supplemental benefits per hour;

m) July 1, 2018 through June 30, 2019: $ 28.27, plus $2.00 in supplemental benefits per hour;

n) July 1, 2019 through June 30, 2020: $30.07, plus $2.18 in supplemental benefit per hour;

o) July 1, 2020 through June 30, 2021: $30.91, plus $2.25 in supplemental benefits per hour;

p) July 1, 2021 through June 30, 2022: $28.60, plus $2.16 in supplemental benefits per hour.

54.    Upon information and belief, the Corporate Defendant was compensated by the Town of Babylon to provide town-wide collection of residential solid waste and recyclables work at the prevailing wage rates for all of the workers who performed work pursuant to the Public Works Contract, including Plaintiffs and Class Members.

55.    Upon information and belief, in connection with the Town of Babylon Public Works Contract, the Defendants also purchased the real property located at 38-42 Wyandanch Avenue, Wyandanch, New York 11798 for the intended purpose of, among other things, truck storage, maintenance, office use, as well as an employee locker room, where Plaintiffs and Defendants' other similarly situated employees were required to report at the start and end of each route assignment (hereinafter referred to as "Defendants' Yard").

**Plaintiffs' Work for Defendants**

56.    Plaintiff Baker worked for Defendants performing residential trash and refuse removal and collection from in or around February 2017 through in or around November 18, 2021 (the "Baker Employment Period").

57.    When Plaintiff was initially hired, he was told that he would be classified as a

14

"shaper" or "helper" employee until he was instated as a full-time employee. Although his duties remained the same throughout his employment period, which included performing trash and refuse and recyclables collection along with a designated driver, Plaintiff Baker was made a full-time employee in or around July 2018.

58.     Throughout the Baker Employment Period, excepting during the winter season, Plaintiff Baker typically worked five (5) days per week, from Monday through Friday, from approximately 4:30 a.m. until between approximately 12:00 p.m. and 1:00 p.m. and sometimes later depending on delays on other route assignments and lack of coverage. At least two (2) times per week, usually on Monday and Tuesday when Plaintiff Baker picked up heavier waste and refuse materials, Plaintiff typically ended his route between 1:00 p.m. and 2:00 p.m., and at times when his route assignment was severely delayed or he was instructed by his supervisor to assist other workers employed by Defendants as drivers and helpers Plaintiff Baker worked as late as 3:00 p.m. On average, Plaintiff Baker regularly worked a total of between approximately thirty-four (34) and forty (40) hours per week and often more, excluding time spent during or after completing his route for which he was not compensated.

59.     From approximately December to February or March of the following year, Plaintiff Baker sometimes worked fewer hours on certain shifts, usually because of decreases in the refuse and recyclables collection during the winter season. During this seasonal period, Plaintiff Baker worked approximately two (2) to three (3) times per week shifts from approximately 4:30 a.m. until between approximately 10:00 a.m. to 12:00 p.m., unless he was instructed by his supervisors to assist other employees who worked for Defendants as drivers or helpers with their route assignments. On average, during the winter season, Plaintiff Baker worked between thirty-three and a half (33.5) to thirty-seven (37) hours per week, and sometimes more,

excluding the time spent during his route or after his shift for which he was not compensated.

60.    At all times, Plaintiff Baker was paid on an hourly basis. From the start of the Baker Employment Period until approximately July 2018, Plaintiff Baker was paid a regular hourly rate of $17.00 per hour for those hours for which he was compensated. From approximately July 2018 until approximately July 2019, Plaintiff Baker was paid regular hourly rates of $17.00 and $30.27 per hour for those hours for which he was compensated. From approximately August 2019 until January 18, 2021, Plaintiff Baker was paid a regular hourly rate of $18.00 per hour for those hours for which he was compensated. From approximately January 18, 2021 until the end of the Baker Employment Period in November 2021, Plaintiff Baker was paid an hourly rate of $18.50 per hour for those hours for which he was compensated.

61.    In or around July 2019, Plaintiff Baker was provided with a LS-58 form to complete and sign which stated that his prevailing wage regular hourly rate would be seventeen dollars ($17.00) per hour plus supplementary benefits for prevailing rate jobs and twelve dollars ($12.00) per hour for non-prevailing wage jobs, although at no point did Plaintiff Baker perform non-prevailing wage jobs. The LS-58, which is dated July 8, 2019, also includes a handwritten annotation that Plaintiff was paid as a "Helper" employee.

62.    Some of Plaintiff Baker's paystubs for 2018 reflect a regular hourly rate of $17.00 and also show that Plaintiff Baker received "additional wages for supplemental benefits" at $9.73 for a portion of the hours for which he was compensated.  The vast majority of Plaintiff Baker's paystubs throughout his employment, however, did not show any payment for supplement benefits.

63.    <u>Plaintiff Xavier Angulo</u> has been employed by Defendants from in or around August 2018 through the present (the "Angulo Employment Period"). From in or around August 2018 until March 2020, Plaintiff Angulo was employed as a "shaper".  Thereafter, from in or

around March 2020 through the present, Plaintiff Angulo has been employed as a full-time driver.

64.    From in or around August 2018 until March 2020, Plaintiff Angulo was scheduled to work approximately three (3) shifts per week, from approximately 4:30 a.m. until between approximately 11:00 a.m. and 1:00 p.m., for a total of between approximately nineteen and a half (19.5) to twenty-seven (27) hours per week, excluding time spent before and during his routes for which he was not compensated.

65.    From in or around March 2020 through the present, while employed as a driver, Plaintiff Angulo was scheduled to work five (5) days per week, from Monday through Friday, from approximately 4:30 a.m. to between 12:00 p.m. and 1:00 p.m., and sometimes later. On days when Plaintiff was scheduled to perform collection of non-recyclable materials only, which was usually two (2) times per week, Plaintiff completed his route between approximately 1:00 p.m. and 2:00 p.m. On average, Plaintiff typically worked between thirty-four (34) to forty (40) hours per week, excluding time spent before and after his routes for which he was not compensated.

66.    From approximately December to February or March of the following year, when less waste and recyclables materials were collected, Plaintiff Angulo sometimes completed his recyclables routes earlier. During these shifts, Plaintiff worked from approximately 4:30 a.m. until approximately between 11:45 a.m. and 12:00 p.m., and sometimes later when his instructed by his supervisors to go assist other employees on other routes which were delayed. On average, during the winter season, Plaintiff Angulo worked between thirty-three and a half (33.5) to thirty-seven (37) hours per week, and sometimes more, excluding the time spent before and during his route or after completing his last pick-up for which he was not at all times compensated.

67.    Throughout the Angulo Employment Period, Plaintiff Angulo was paid on an hourly basis. From the start of the Angulo Employment Period until in or around August 2019,

Plaintiff Angulo was paid a regular hourly rate of $20.00 per hour for those hours for which he was compensated. From in or around August 2019 until the present, Plaintiff Angulo has been paid a regular hourly rate of $21.10 per hour for those hours for which he is compensated.

68.    Some of Plaintiff Angulo's paystubs that reflect an hourly rate of $21.10 per hour for "Driver Hourly" pay also show that Plaintiff Angulo received a portion of his regular hours worked as "Supplemental Pay – Driver" at his regular hourly rate of $21.10 and some overtime pay at $31.65 per hour. None of Plaintiff Angulo's paystubs throughout his employment show payment at the correct prevailing wage rate.

69.    Plaintiff Owen Aviles worked for Defendants since in or around August 2019 until January 28, 2022 (the "Aviles Employment Period"). From in or around August 2019 until June 2020, Plaintiff Aviles was employed as a "helper" and from in or around June 2020 until the end of the Aviles Employment Period, Plaintiff Aviles was employed as a full-time driver.

70.    Throughout the Aviles Employment Period, Plaintiff Aviles worked five (5) days per week, from Monday through Friday. Typically, on Mondays, Tuesdays and Thursdays, Plaintiff Aviles worked from 4:30 a.m. until between approximately 1:00 p.m. to 2:00 p.m., and on Wednesdays and Fridays Plaintiff Aviles worked from approximately 4:30 a.m. until approximately between noon to 1:00 p.m. and often times later, depending on whether he was assigned to pick up recyclables or if he was required to assist other employees who worked for Defendants as drivers or helpers on their route assignments. On average, Plaintiff Aviles typically worked between approximately thirty (30) to forty (40) hours per week, excluding the time spent during or after the completion of his route for which he was not compensated.

71.    At all times, Plaintiff Aviles was paid on an hourly basis. From the start of the Aviles Employment Period until in or around March 2020, Plaintiff Aviles was paid a regular

hourly rate of $20.00 per hour for those hours for which he was compensated. From in or around March 2020 until the end of the Aviles Employment Period, Plaintiff Aviles was paid a regular hourly rate of $21.10 for those hours for which he was compensated.

72.    Throughout the relevant time period, Plaintiffs and Defendants' other trash and refuse removal and collection employees were required to report to Defendants' Yard at approximately 4:30 a.m. each morning in order to receive their route assignment and, for drivers, to inspect the trucks and ensure that the truck hopper, breaks and windshields were functioning and unpark and position the truck to depart the Yard with their designated helper(s) at 5:00 a.m. Each truck was assigned between one (1) to two (2) helpers. On or around April 2020, Defendants also began to require that helpers assist drivers with the truck inspection due to staff shortages and to avoid delays in the trucks departing the Yard.

73.    Throughout the relevant time period, after their last stop on their collection route, Plaintiffs and Defendants' other trash collection employees were required to drop off the waste and recyclables at designated waste processing facilities in Long Island, including "Omni" and "Covanta", refuel the trucks, and return the trucks to the Defendants' Yard. In addition, Defendants' drivers were also required to complete paperwork detailing, among other things, the time that they departed from Defendants' Yard in the morning and the time they completed their collection route.

74.    Pursuant to Defendants' policy, Plaintiffs were repeatedly told that they would be paid for up to an eight (8) hour daily shift, regardless of any off-the-clock mandated work performed. Specifically, Defendants' drivers were instructed to record their start time for their shift as the time that they left Defendants' Yard to commence their collection route and to not record the time spent at Defendants' Yard receiving their assignment or helper and preparing the trucks

19

to depart. Consistent with Defendants' policy, Plaintiff Aviles was informed by one of his supervisors that he was considered "on the clock" when the truck departed Defendants' Yard but not a moment before that. Additionally, pursuant to Defendants' policies, Defendants' drivers were instructed to record the end of their work day for certain shifts as the time when they called their supervisors to inform them that they had completed their last route pick up or when Plaintiffs had serviced the trucks at the transit stations so they would be ready for the following day's shift, such that for certain shifts Plaintiffs were not permitted to record the time spent driving to Defendants' Yard to drop off the truck. Furthermore, when Plaintiffs were instructed to assist other drivers or helpers to complete their delayed routes, the drivers were not permitted to record the additional hours worked on other routes.

75.     Throughout the relevant time period, Defendants did not maintain a time clock or other timekeeping system to record the actual hours that Plaintiffs and Defendants' other trash collection employees worked, aside from the forms that drivers filled out indicating the start and end times of the collection routes.

76.     During the relevant time period, Defendants routinely engaged in practices that discounted the total number of hours for which Plaintiffs and Defendants' other trash and refuse removal and collection employees were paid. Specifically, Defendants automatically deducted meal breaks regardless of the total work day hours and the fact that at no point were employees permitted to take a lunch break, required employees to perform off-the-clock work that was inconsistent with the start and end times reported on forms completed by drivers, and only paid employees up to a certain threshold number of hours as regular hours and the remainder as "Supplemental-Pay" consistent with Defendants' policy of only paying employees up to an eight (8) hour work day or up to forty (40) hours per week. As such, although Plaintiffs routinely worked

20

in excess of forty (40) hours per week, typically during the non-winter season or during staff shortages, Plaintiffs' paystubs did not accurately reflect their total hours worked.

77.     Upon information and belief, Plaintiffs' and Defendants' other trash and refuse collection employees were only compensated for time spent upon their departure from Defendants' Yard and the time they called their Supervisor at the completion of their last pick up, which was the time recorded by the drivers, but were not paid for all time spent at Defendants' Yard preparing the trucks and receiving their route assignment prior to driving to the first stop on their collection route or for all time spent after their last collection pick-up and traveling to the waste or recycling stations, refueling the trucks, or traveling back to Defendants' Yard to park the truck for the next day, or time worked on other employees' collection routes.

78.     Since Defendants did not record the actual hours worked by Plaintiffs and their other trash collection employees, Plaintiffs were not compensated for a significant number of regular and overtime work hours each week. Specifically, Plaintiffs and Defendants' other trash collection employees were mandated to arrive at Defendants' Yard no later than 4:30 a.m. On average, Plaintiffs' and Defendants' other trash collection employees spent between fifteen (15) minutes to thirty (30) minutes (i.e., from 4:30 a.m. to 5:00 a.m.) each morning at Defendants' Yard before departing to begin their collection route, plus an additional approximately forty-five minutes to sixty (45-60) minutes, consisting of time spent at the transit stations, traveling to Defendants' yard, or assisting other employees in the completion of their routes. However, Plaintiffs were not permitted to record all of this time despite the fact that Plaintiffs and Defendants' other trash collection employees were required by Defendants to perform this work exclusively for Defendants' benefit to meet their obligations under the Public Works contract.

79.     During the relevant time period, although Plaintiffs were told by their supervisors

that they were entitled to a one (1) hour meal break, at no point were Plaintiffs permitted to take an uninterrupted meal or lunch break. Furthermore, Plaintiffs were told by their supervisors that they would be paid for up to an eight (8)-hour workday, regardless of whether their route lasted more than eight (8) hours in any given shift and despite the fact that Plaintiffs were not permitted to take their meal break during any shift. Defendants' trucks manually beeped and notified Defendants if the truck was parked for longer than approximately fifteen (15) minutes, at which point Plaintiffs were immediately contacted by Defendants for an explanation as to why there was a delay at any particular location and instructed to resume their route, such that Plaintiffs were not given any opportunity to take more than a fifteen (15) minute break and let alone at least a thirty (30) minute meal break.

80.    In total, on average, Plaintiffs and Defendants' other trash collection employees were not paid for between approximately one hour (1) and two hours (2) of uncompensated work time each day, which equaled between five hours (5) and ten hours (10) of unpaid time each week, including the one (1) hour deducted from their total hours worked for meal breaks they were not permitted to take during any given shift.

81.    As a result of Defendants' failure to record and compensate Plaintiffs and their other trash removal and collection employees for all hours worked each week, the paystubs accompanying Plaintiffs' wage payments were not accurate because they did not include all hours worked during the pay period.

82.    On or about November 10, 2021, Defendants held a staff meeting at Defendants' Yard with Plaintiffs and approximately sixteen (16) other employees who performed trash collection work for Defendants on behalf of the Town of Babylon. During this meeting, Defendants addressed safety protocols and traffic violations, mandatory employee sensitivity

training, and the status of the contract with the Town of Babylon.  During this meeting, Defendant Core stated that he heard that "one or two guys were making trouble with respect to prevailing wages", and that he was always willing to discuss prevailing wage questions individually. Defendant Core explained to Plaintiffs that the prevailing wage rates had decreased the previous July but that this decreased rate had not been applied to Defendants' full-time employees, such as Plaintiffs; however, Core indicated that the decreased rates were implemented for Defendants' "Shape Up" and "Per diem" employees. Defendant Core further stated that Plaintiffs were compensated higher rates than the combined prevailing wage rates and supplementary benefits required by the prevailing wage schedules, because the rates provided by Defendants consisted of a combined package of benefits Defendants expended, which included holiday and sick pay not required under the prevailing wage schedules, 401(k) mandated enrollment, and health insurance benefits.

**Defendants' Retaliation Against Plaintiff Baker**

83.     Plaintiff Baker inquired about prevailing wages during two (2) separate occasions. In the first instance, Plaintiff Baker called his supervisor "Pepe" in or around October 2021, to ask whether the type of work Plaintiff Baker performed entitled him to receive a specific prevailing wage rate, to which Pepe responded that he would need to confirm with Defendant Core and get back to him on the matter. The second time Plaintiff Baker inquired regarding prevailing wage and supplementary benefits pay was on November 10, 2021, when the staff meeting was held with other employees, as referenced at Paragraph 85, above.

84.     At the November 10, 2021 meeting, Plaintiff Baker and his coworkers were told by Defendant Core that employees hired as "shapers" received a higher rate of pay than the prevailing wage rate for the classification of work because they were hired as independent contractors or "per

diem", even though this was never addressed to Plaintiffs when they were hired or at any other point besides when they inquired as to prevailing wage and supplemental benefit pay.  During the meeting, Plaintiff Baker showed Defendant Core and his supervisors the prevailing wage rates he believed Plaintiffs and Defendants' other similarly situated employees were entitled to be paid. As stated above, Defendant Core responded that Plaintiffs were paid above the applicable prevailing wage rates and supplementary benefits.

85.    On November 15, 2021 at approximately 7:00 a.m., while Plaintiff Baker was performing his daily trash and refuse route alongside Plaintiff Angulo near West Babylon, Plaintiff Baker was very nearly struck by a vehicle. Although Plaintiff Baker managed to jump out of the vehicle's way and avoid being struck, Plaintiff Baker was left in shock by the situation and did not feel comfortable continuing to work his shift. After the incident, Plaintiff Angulo telephoned Defendants' main office seeking to speak with "Gina", one of Defendants' Human Resources employees, who did not respond. Since Plaintiffs Baker and Angulo were not able to speak with Gina, Plaintiffs then called "Pepe" during which Plaintiff Baker explained that he was nearly struck by a car and did not feel comfortable and safe continuing to work his shift. Pepe told Plaintiff Baker that he should reach out to Defendant Core to schedule a meeting and also stated, "Cordell, go home", which Plaintiff Baker believed meant that he was released early from his shift that day. Accordingly, Plaintiff Angulo drove Plaintiff Baker back to Defendants' Yard and Plaintiff Baker proceeded to go home.  Later that morning, Plaintiff Baker received a phone call from Pepe who again stated that Plaintiff Baker should contact Defendant Core to schedule an in-person meeting.

86.    The following day, on November 16, 2021, Plaintiff Baker reported to Defendants' Yard at approximately 4:30 a.m. to work his shift and met individually with Pepe. During their conversation, Plaintiff Baker apologized for not being able to complete his shift the day before.

Pepe addressed lack of coverages for routes and told Plaintiff Baker that he could go home for the day but that he should call the main office again and to ask for Gina to schedule an appointment with Defendant Core. Later that morning at approximately 7:00 a.m., Plaintiff Baker received a phone call from Gina informing him that his meeting with Core was scheduled for Thursday, November 18, 2021 at 9:00 a.m.

87.     On November 18, 2021, Plaintiff Baker promptly showed up at Defendants' main office to meet with Defendant Core. While waiting for the meeting to start, Plaintiff Baker was greeted by Core, who was exiting one of the conference rooms and who stated, "Cordell, you are the guy who was asking about prevailing wages?"  Plaintiff Baker merely nodded and waited to be called to the meeting room.

88.     When Plaintiff Baker was called into the meeting room, Defendant Core informed him that he was terminated from his position due to "personal reasons" but did not elaborate further. Plaintiff Baker sought further clarification but was told that he was no longer employed by Defendants and that his failure to complete his shift earlier in the week (on Monday) was a definitive ground for termination. Plaintiff Baker explained that he had asked Pepe if it was okay for him to go home because he did not feel emotionally stable to complete his shift after he was nearly struck by a vehicle while performing his shift. Defendant Core responded that he was not aware of that situation but that a final decision had been made regarding his termination.

89.     With the exception of one (1) complaint that was filed against Plaintiff Baker by a Town of Babylon resident in or around 2019, at no point was Plaintiff Baker disciplined for his work performance prior to his termination.

### FIRST CAUSE OF ACTION
### FAIR LABOR STANDARDS ACT – UNPAID OVERTIME
**(Brought on Behalf of Plaintiffs and the Collective Action Members)**

90.     Plaintiffs, on behalf of themselves and the Collective Action Members, repeat and reallege each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

91.     Defendants violated the FLSA overtime rights of Plaintiffs and the Collective Action Members by failing to pay overtime premiums of one and one-half (1.5) times employees' regular hourly rates for all hours worked in excess of forty (40) hours per week.

92.     By failing to pay overtime at a rate not less than one and one-half (1.5) times the regular rate of pay for all work performed in excess of 40 hours per week, Defendants have violated and continue to violate the FLSA, 29 U.S.C. §§ 201 *et seq.*, including 29 U.S.C. §§ 207(a)(1) and 215(a)(2).

93.     The foregoing conduct, as alleged, constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a).

94.     Defendants' failure to pay overtime caused Plaintiffs and the Collective Action Members to suffer loss of wages and interest thereon. Plaintiffs and the Collective Action Members are entitled to recover from Defendants their unpaid overtime premium compensation, damages for unreasonably delayed payment of wages, liquidated damages, reasonable attorneys' fees, and costs and disbursements of the action pursuant to 29 U.S.C. § 216(b).

### SECOND CAUSE OF ACTION
### NEW YORK LABOR LAW – UNPAID OVERTIME
**(Brought on Behalf of Plaintiffs and the Class Members)**

95.     Plaintiffs, on behalf of themselves and the Class Members, repeat and reallege each and every allegation of the preceding paragraphs hereof with the same force and effect as though

fully set forth herein.

96.     Defendants violated the NYLL overtime rights of the Plaintiffs and the Class Members by failing to pay overtime premiums consisting of one and one-half (1.5) times employees' regular hourly rates for all hours worked in excess of forty (40) hours per week.

97.     Defendants' policy of excluding certain hours from Plaintiffs' and the Class Members' total hours worked per workweek, specifically the eight(8)-hour cap for each route regardless of how long the route took to be completed in any given shift; pre-shift truck inspection time spent at Defendants' Yard; time spent driving from the last route drop-off to the service transit stations where the trash and refuse materials were delivered; refueling the truck; and, driving to Defendants' Yard to drop off the truck and mandated paperwork at the end of each shift, and automatically deducted one (1) hour meal breaks that Plaintiffs were not permitted to take, resulted in significant unpaid overtime pay for Plaintiffs and the Class Members.

98.     Defendants willfully violated Plaintiffs' and the Class Members' rights by failing to pay overtime compensation at a rate of not less than one and one-half (1.5) times the regular rate of pay for all hours worked in excess of 40 each week, in violation of the NYLL and regulations promulgated thereunder.

99.     Defendants' failure to pay overtime premium compensation caused Plaintiffs and the Class Members to suffer loss of wages and interest thereon. Plaintiffs and the Class Members are entitled to recover from Defendants their unpaid overtime compensation, damages for unreasonably delayed payment of wages, liquidated damages, reasonable attorneys' fees, and costs and disbursements of the action pursuant to NYLL §§ 663(1) *et seq.*

### THIRD CAUSE OF ACTION
### NEW YORK LABOR LAW – WAGE STATEMENT VIOLATIONS
**(Brought on Behalf of Plaintiffs and the Class Members)**

100.     Plaintiffs, on behalf of themselves and the Class Members, repeat and reallege each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

101.     Defendants have willfully failed to supply Plaintiffs and the Class Members a proper wage statement as required by Article 6, § 195(3), since the paystubs Defendants provided with their wage payments did not include all hours that Plaintiffs and Class Members worked each pay period, on account of the time spent at Defendants' Yard at the start and end of each shift, and the required tasks for which they were not compensated.

102.     Due to Defendants' violations of the NYLL, Plaintiffs and the Class Members are entitled to recover from Defendants two hundred fifty dollars ($250.00) per employee for each work day that the violations occurred or continue to occur, or a total of five thousand dollars ($5,000.00) per employee, as provided for by NYLL §§ 198(1-d) liquidated damages as provided for by the NYLL, reasonable attorneys' fees, costs, pre-judgment and post-judgment interest, and injunctive and declaratory relief.

### FOURTH CAUSE OF ACTION
### BREACH OF CONTRACT
**(Brought on Behalf of Plaintiffs and the Class Members)**

103.     Plaintiffs, on behalf of themselves and the Class Members, repeat and reallege each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

104.     Upon information and belief, the Public Works Contract entered into by Defendant Encon contained schedules of the prevailing rates of wages and supplemental benefits or reference

28

to the NYLL provisions governing payment of prevailing wages to be paid to Plaintiffs and the employees performing work pursuant to such contract.

105.    Those prevailing rates of wages and supplemental benefits were made part of the Public Works Contract for the benefit of the Plaintiffs and the other employees performing work pursuant to such contract. In the event that the contracts or agreements entered into failed to explicitly contain prevailing wage schedules, the prevailing wage requirements were supplemented as a matter of law, requiring Defendants to pay the Plaintiffs and the Class Members prevailing wages, daily/weekly overtime and supplemental benefits for all work performed.

106.    Defendants' failure to pay Plaintiffs and the Class Members at the correct prevailing wage rates for straight time, overtime, and supplemental benefits for work performed pursuant to the Public Works Contract constituted a material breach of the contract entered into directly or indirectly between Encon and certain public entities.

107.    As a result of Encon's failure to pay Plaintiffs and the Class Members at prevailing wage rates, Plaintiffs and the Class Members are entitled to relief from Encon for breach of contract under New York common law of contracts.

**FIFTH CAUSE OF ACTION**
**UNJUST ENRICHMENT & QUANTUM MERUIT**
**(Pled In The Alternative)**
**(Brought on Behalf of Plaintiffs and the Class Members)**

108.    Plaintiffs, on behalf of themselves and the Class Members, repeat and reallege each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

109.    Based on Encon's failure to pay Plaintiffs and Class Members the appropriate prevailing wage rates, Encon was unjustly enriched at the expense of Plaintiffs and Class Members.

110.    Equity and good conscience require that Encon pay restitution to Plaintiffs and the Class Members.

111.    Upon information and belief, when Encon entered into the Public Works Contracts, they agreed to pay the required prevailing wages, overtime, shift-differential and holiday premiums, and supplemental benefit rates of pay to Plaintiffs and other employees who performed work pursuant to the contract.

112.    Plaintiffs and Class Members provided valuable services to Encon performing prevailing wage jobs for which Plaintiffs and Class Members expected proper compensation. Encon knowingly accepted such services yet failed to pay Plaintiffs and the Class Members the reasonable value of such services as defined by the New York State prevailing wage schedules.

113.    As a result of Encon's failure to pay Plaintiffs and Class Members at prevailing wage rates on public works jobs and Encon's corresponding unjust enrichment, Plaintiffs and Class Members are entitled to relief from Encon under New York's common law of unjust enrichment.

114.    As a result of Encon's failure to pay Plaintiffs and Class Members the reasonable value of the valuable services they rendered, Plaintiffs and Class Members are entitled to relief from Defendants under New York's common law of quantum meruit.

**SIXTH CAUSE OF ACTION**
**NEW YORK LABOR LAW – UNLAWFUL RETALIATION**
**(Brought on Behalf of Plaintiff Baker)**

115.    Plaintiff Baker repeats and realleges each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

116.    Plaintiff Baker attempted to enforce his rights under the NYLL by inquiring with Defendants regarding his right to receive payment of prevailing wages and supplementary benefits for the work he performed pursuant to contracts entered into between Defendants and the Town of

Babylon for trash and refuse and recyclable material collection.

117.    Plaintiff Baker's conduct and actions constitutes protected under the NYLL § 215.

118.    Defendants retaliated against Plaintiff Baker after he complained to Defendants regarding their failure to pay prevailing wages and supplementary benefits to Plaintiff and Defendants' other similarly situated employees.

119.    By engaging in the retaliatory acts alleged herein, Defendants retaliated against Plaintiff Baker, discriminated against him, and penalized him in violation of NYLL § 215.

120.    Plaintiff Baker has suffered damages, including but not limited to emotional distress damages and lost wages as a result of Defendants' retaliation.

121.    Defendants' retaliation against Plaintiff Baker altered the terms of his employment specifically after Plaintiff inquired with his supervisors and Defendants about prevailing wages, which the Individual Defendant recognized on the date of Plaintiff Baker's termination.

122.    Notice of this claim has been served upon the Attorney General pursuant to NYLL § 215(2).

123.    Plaintiff Baker is entitled to equitable relief, monetary relief including but not limited to reinstatement, compensatory and other damages, reasonable attorneys' fees and costs, punitive damages, and other appropriate relief.

## PRAYER FOR RELIEF

Wherefore, Plaintiffs, on behalf of themselves and all other similarly situated Collective Action Members and Class Members, respectfully request that this Court grant the following relief:

a.    Designation of this action as a collective action on behalf of the Collective Action Members and ordering the prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all similarly situated members of an FLSA Opt-In Class, apprising them of the

31

pendency of this action, permitting them to assert timely FLSA claims in this action by filing individual Consents to Sue pursuant to 29 U.S.C. § 216(b) and appointing Plaintiffs and their counsel to represent the Collective Action Members;

b.     Certification of this action as a class action pursuant to Fed. R. Civ. P. 23(b)(2) and (3) on behalf of the Class, appointing Plaintiffs and their counsel to represent the Class and ordering appropriate monetary, equitable and injunctive relief to remedy Defendants' violation of the common law and New York State law;

c.     An order tolling the statute of limitations;

d.     A declaratory judgment that the practices complained of herein are unlawful under the FLSA, NYLL and New York Common Law;

e.     An injunction against Defendants and their officers, agents, successors, employees, representatives and any and all persons acting in concert with Defendants, as provided by law, from engaging in each of the unlawful practices, policies and patterns set forth herein;

f.     An award of compensatory damages as a result of Defendants' failure to pay overtime compensation pursuant to the FLSA and the NYLL and supporting regulations;

g.     An award of compensatory damages as a result of Defendants' failure to pay all wages to which Plaintiffs and the Class Members are entitled, pursuant to the NYLL and supporting regulations;

h.     An award of liquidated and/or punitive damages as a result of the Defendants' willful failure to pay overtime compensation pursuant to the FLSA and the NYLL and supporting regulations;

32

i.    An award of liquidated damages for Defendants' failure to pay all wages to which Plaintiffs and the Class Members are entitled, pursuant to the NYLL and supporting regulations

j.    An award of two hundred fifty dollars ($250.00) per Plaintiff and each of the Class and Subclass Members for each day that the violations of NYLL, Article 6 § 195(3), pertaining to distribution of wage statements, occurred or continue to occur, or a total of five thousand dollars ($5,000.00) per Plaintiff and each of the Class and Subclass Members as provided for by NYLL, Article 6 § 198(1-d);

k.    An award of monetary damages to be proven at trial for all unpaid prevailing wages, daily/weekly overtime and supplemental benefits owed to Plaintiffs and the Class Members;

l.    An award of prejudgment and post-judgment interest;

m.    An award of costs and expenses of this action together with reasonable attorneys' and expert fees; and

n.    Such other and further relief as this Court deems just and proper.

## DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs demand a trial by jury on all questions of fact raised by the complaint.


Dated: New York, New York
       April 1, 2022

                              Respectfully submitted,

                              **PELTON GRAHAM LLC**

                              By: _____
                              Brent E. Pelton (BP 1055)

33

Taylor B. Graham (TG 9607)
111 Broadway, Suite 1503
New York, New York 10006
Telephone: (212) 385-9700
Facsimile: (212) 385-0800

*Attorneys for Plaintiffs, the putative FLSA Collective and Class*

**Notice of Shareholder Liability for Services Rendered
Pursuant to § 630 of the Business Corporation Law of New York**

Pursuant to the provisions of § 630 of the Business Corporation Law of New York ("NYBCL"), the ten (10) largest shareholders of ENCON INDUSTRIES CORP., are hereby notified that the plaintiffs in this matter, individually and on behalf of the putative FLSA collective and the class they seek to represent, intend to enforce your personal liability, as the ten (10) largest shareholders of ENCON INDUSTRIES CORP., and charge you with indebtedness of said corporation to the plaintiffs for services performed for the corporations as employees during the six (6) year plus 228-day period preceding the filing of the complaint.

Services for the above-referenced corporation have either terminated within the last 180 days or are ongoing as of the date of this complaint.

Dated:  April 1, 2022

_____
Brent. E. Pelton

35

## CONSENT TO BECOME PARTY PLAINTIFF

By my signature below, I hereby authorize the filing and prosecution of claims in my name and on my behalf to contest the failure of Encon Industries Corp. (Encon), and/or their respective owners, affiliated companies, subsidiaries, contractors, directors, officers, franchisees and/or affiliates to pay me overtime wages and prevailing wages as required under state and/or federal law, and also authorize the filing of this consent in the action(s) challenging such conduct. I authorize being **named as a representative plaintiff** in this action to make decisions on behalf of all other plaintiffs concerning the litigation, the method and manner of conducting this litigation, the entering of an agreement with Plaintiff's counsel concerning attorneys' fees and costs, and all other matters pertaining to this lawsuit. I understand that I will be represented by Pelton Graham LLC without prepayment of costs or attorneys' fees. I understand that if plaintiffs are successful, costs expended by attorneys on my behalf will be deducted from my settlement or judgment first. I understand that my attorneys may petition the court for an award of fees and costs to be paid by defendants on my behalf. I understand that the fees retained by the attorneys will be either the amount received from the defendants or approximately 1/3 (33.33%) of my total settlement or judgment amount (including fees), whichever is greater.

11/18/2021

_____          _____
Signature                                Printed Name

## CONSENT TO BECOME PARTY PLAINTIFF

By my signature below, I hereby authorize the filing and prosecution of claims in my name and on my behalf to contest the failure of Encon Industries Corp. (Encon), and/or their respective owners, affiliated companies, subsidiaries, contractors, directors, officers, franchisees and/or affiliates to pay me overtime wages and prevailing wages as required under state and/or federal law, and also authorize the filing of this consent in the action(s) challenging such conduct. I authorize being **named as a representative plaintiff** in this action to make decisions on behalf of all other plaintiffs concerning the litigation, the method and manner of conducting this litigation, the entering of an agreement with Plaintiff's counsel concerning attorneys' fees and costs, and all other matters pertaining to this lawsuit. I understand that I will be represented by Pelton Graham LLC without prepayment of costs or attorneys' fees. I understand that if plaintiffs are successful, costs expended by attorneys on my behalf will be deducted from my settlement or judgment first. I understand that my attorneys may petition the court for an award of fees and costs to be paid by defendants on my behalf. I understand that the fees retained by the attorneys will be either the amount received from the defendants or approximately 1/3 (33.33%) of my total settlement or judgment amount (including fees), whichever is greater.

_____          xavier Angulo
Signature                                                      _____
C32765A4D4FC4BE...                                  Printed Name

## CONSENTIMIENTO PARA SER UN DEMANDANTE

Por mi firma abajo yo autorizo la presentación y tramitación de una acción legal en mi nombre y representación en contra de Encon Industries Corp. (Encon) y sus respectivos propietarios, gerentes, oficiales, directores, sucesores, predecesores, subsidiarias y afiliados para que me sean pagadas las horas extras y los salarios mínimos tal como lo requieren las normas estatales y/o federales e igualmente autorizo la presentación de este consentimiento en la acción(es) con el fin de debatir la conducta ilegal. Yo autorizo ser nombrado como **demandante representativo** en esta acción legal para tomar decisiones en nombre de otros demandantes a quienes pueda concernir el resultado de este proceso, el método y la manera en cómo debe llevarse a cabo este litigio y la decisión de llegar a un acuerdo dentro de la causa y todo lo que concierna a los honorarios profesionales y costas del proceso y cualesquiera otras decisiones relacionadas con este litigio. Yo entiendo que estaré representado por Pelton Graham LLC sin tener que pagar por adelantado costas u honorarios de abogados. Yo entiendo que, si los demandantes tienen éxito, los costos asumidos por los abogados en mi nombre serán deducidos inicialmente de la porción de mi acuerdo en una conciliación o como resultado de una sentencia en juicio. Yo entiendo que mis abogados podrán solicitar a la Corte que les sean retribuidos los honorarios y costas procesales por parte de los demandados en nombre mío. Yo entiendo que los valores de retención de los abogados podrán ser ya sea el monto recibido por parte de los demandados o el monto aproximado de 1/3 (33.33%) del total del acuerdo de conciliación o del valor obtenido a través de la sentencia (incluyendo honorarios), cual sea la suma más alta.

_____          xavier Angulo
Firma                                                            _____
C32765A4D4FC4BE...                                  Nombre Escrito

This is a complete and accurate translation of the English "Consent to Become a Party Plaintiff" form above.

## CONSENT TO BECOME PARTY PLAINTIFF

By my signature below, I hereby authorize the filing and prosecution of claims in my name and on my behalf to contest the failure of Encon Industries Corp. (Encon), and/or their respective owners, affiliated companies, subsidiaries, contractors, directors, officers, franchisees and/or affiliates to pay me overtime wages and prevailing wages as required under state and/or federal law, and also authorize the filing of this consent in the action(s) challenging such conduct. I authorize being **named as a representative plaintiff** in this action to make decisions on behalf of all other plaintiffs concerning the litigation, the method and manner of conducting this litigation, the entering of an agreement with Plaintiff's counsel concerning attorneys' fees and costs, and all other matters pertaining to this lawsuit. I understand that I will be represented by Pelton Graham LLC without prepayment of costs or attorneys' fees. I understand that if plaintiffs are successful, costs expended by attorneys on my behalf will be deducted from my settlement or judgment first. I understand that my attorneys may petition the court for an award of fees and costs to be paid by defendants on my behalf. I understand that the fees retained by the attorneys will be either the amount received from the defendants or approximately 1/3 (33.33%) of my total settlement or judgment amount (including fees), whichever is greater.

_____
Signature

_____
Owen Aviles
Printed Name